Jose L. Linares
Mark M. Makhail
**McCARTER & ENGLISH, LLP**
4 Gateway Center
100 Mulberry St.
Newark, NJ 07102
(973) 622-4444
jlinares@mccarter.com
mmakhail@mccarter.com

*Attorneys for Plaintiffs AbbVie Inc. and Allergan Pharmaceuticals International Limited*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ABBVIE INC. and ALLERGAN PHARMACEUTICALS INTERNATIONAL LIMITED,<br><br>*Plaintiffs*,<br><br>v.<br><br>HETERO USA INC., HETERO LABS LIMITED UNIT-III, HETERO LABS LIMITED, and HONOUR LAB LIMITED,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: __________________ |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs AbbVie Inc. ("AbbVie") and Allergan Pharmaceuticals International Limited ("Allergan") (collectively, "Plaintiffs"), by its attorneys, bring this action against Defendants Hetero USA Inc. ("Hetero USA"), Hetero Labs Limited Unit-III ("Hetero Unit-III"), Hetero Labs Limited ("Hetero Labs"), and Honour Lab Limited ("Honour") (collectively "Hetero"), and allege as follows:

## NATURE OF THE ACTION

1. This is a civil action for patent infringement of U.S. Patent Nos. 12,090,148 ("the '148 patent"), 12,350,259 ("the '259 patent"), 12,383,545 ("the '545 patent"), and 12,465,598 ("the '598 patent") (collectively, "the Patents-in-Suit") arising under the United States Patent Laws, Title 35, United States Code, § 1, *et seq.*, and in particular under 35 U.S.C. § 271, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This action relates to Hetero's recent submission to the United States Food and Drug Administration ("FDA") of an Abbreviated New Drug Application ("ANDA") seeking approval to market generic versions of Plaintiffs' commercial pharmaceutical product QULITPA® (atogepant) oral tablets in 10 mg, 30 mg, and 60 mg dosage forms ("QULIPTA® Tablets") submitted under New Drug Application ("NDA") No. 215206, prior to the expiration of patents listed in the *Approved Drug Products with Therapeutic Equivalence Evaluations* (an FDA publication commonly known as the "Orange Book") for QULIPTA® Tablets. Hetero has submitted ANDA No. 220986 ("Hetero's ANDA"), which seeks approval to market its generic version of QULIPTA® Tablets, atogepant oral tablets, 10 mg, 30 mg, 60 mg ("Hetero's generic products"), prior to the expiration of the Patents-in-Suit.

2. Hetero has infringed one or more claims of the Patents-in-Suit under 35 U.S.C. § 271(e)(2)(A) by virtue of its filing of ANDA No. 220986 seeking FDA approval for the commercial manufacture, use, import, offer for sale, and/or sale in the United States of Hetero's generic products prior to the expiration of the Patents-in-Suit, or any extensions thereof. Hetero will infringe one or more claims of the Patents-in-Suit under 35 U.S.C. § 271(a), (b), and/or (c) should it engage in the commercial manufacture, use, offer for sale, sale, distribution in, or importation into the United States of Hetero's generic products prior to the expiration of the Patents-in-Suit, or any extensions thereof.

## THE PARTIES

3. Plaintiff AbbVie is a corporation organized and existing under the laws of Delaware, with its corporate headquarters at 1 North Waukegan Road, North Chicago, Illinois 60064. AbbVie holds NDA No. 215206 for QULIPTA® Tablets.

4. AbbVie is a global research and development-based biopharmaceutical company committed to developing innovative therapies for some of the world's most complex and critical conditions. The company's mission is to use its expertise, dedicated people, and unique approach to innovation to markedly improve treatments across therapeutic areas, including migraine treatment.

5. AbbVie markets, distributes, and sells therapeutic drug products, including QULIPTA® Tablets, in this judicial district and throughout the United States.

6. Plaintiff Allergan is a corporation organized and existing under the laws of Ireland, with a principal place of business at Clonshaugh Business & Technical Park, Dublin 17, Ireland D17 E400. Allergan is the assignee of the '148, '259, '545, and '598 patents. Allergan is an indirectly wholly owned subsidiary of AbbVie.

7. Plaintiffs allege the following about Hetero on information and belief formed after a reasonable inquiry.

8. Hetero USA is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1035 Centennial Avenue, Piscataway, New Jersey 08854. Hetero USA is the U.S. Regulatory Agent for Hetero Unit-III, a division of Hetero Labs, including for ANDA No. 220986. Hetero USA is a partially owned subsidiary of Hetero Labs.

9. Hetero Unit-III is a corporation organized and existing under the laws of India, having a principal place of business at 22-110, IDA Jeedimetla, Hyderabad – 500 055, Telangana, India. Hetero Unit-III is a division of Hetero Labs.

10. Hetero Labs is a corporation organized and existing under the laws of India, having a principal place of business at 7-2-A2, Hetero Corporate Industrial Estates, Sanath Nagar, Hyderabad 500 018, Andhra Pradesh, India.

11. Honour is a corporation organized and existing under the laws of India, having a principal place of business at Nexity, Tower 30, 12th Floor, Survey No. 83/1, Knowledge City, Raidurg, Hyderabad, Telangana, India, 500081.

12. Hetero is in the business of, *inter alia*, manufacturing, marketing, and selling generic copies of branded pharmaceutical products throughout the United States, including in this judicial district.

13. Following any FDA approval of Hetero's ANDA, Hetero will distribute and sell the proposed Hetero generic products described in Hetero's ANDA throughout the United States, including in this judicial district.

**JURISDICTION AND VENUE**

14. This action arises under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, including 35 U.S.C. § 271, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

15. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

16. This Court has personal jurisdiction over Defendant Hetero USA. Hetero USA is in the business of manufacturing, marketing, importing, and selling pharmaceutical drug products, including generic drug products. Hetero USA directly, or indirectly, develops, manufactures,

markets, and sells generic drugs throughout the United States and in this judicial district. Hetero USA has purposefully conducted and continues to conduct business in this judicial district, and this judicial district is a likely destination of Hetero's generic products upon approval of Hetero's ANDA.

17. This Court has personal jurisdiction over Defendant Hetero Unit-III. Hetero Unit-III is in the business of manufacturing, marketing, importing, and selling pharmaceutical drug products, including generic drug products. Hetero Unit-III directly, or indirectly, develops, manufactures, markets, and sells generic drugs throughout the United States and in this judicial district. Hetero Unit-III has purposefully conducted and continues to conduct business in this judicial district, and this judicial district is a likely destination of Hetero's generic products upon approval of Hetero's ANDA.

18. This Court has personal jurisdiction over Defendant Hetero Labs. Hetero Labs is in the business of manufacturing, marketing, importing, and selling pharmaceutical drug products, including generic drug products. Hetero Labs directly, or indirectly, develops, manufactures, markets, and sells generic drugs throughout the United States and in this judicial district. Hetero Labs has purposefully conducted and continues to conduct business in this judicial district, and this judicial district is a likely destination of Hetero's generic products upon approval of Hetero's ANDA.

19. This Court has personal jurisdiction over Defendant Honour. Honour is in the business of manufacturing, marketing, importing, and selling pharmaceutical drug products, including generic drug products. Honour directly, or indirectly, develops, manufactures, markets, and sells generic drugs throughout the United States and in this judicial district. Honour has

purposefully conducted and continues to conduct business in this judicial district, and this judicial district is a likely destination of Hetero's generic products upon approval of Hetero's ANDA.

20. Honour is a backward-integrated unit for Hetero Labs and is part of the Hetero group of companies. *CareEdge Ratings – Honour Lab Limited, December 31, 2024* at 1, https://www.careratings.com/upload/CompanyFiles/PR/202412141244_Honour_Lab_Limited.pdf (last visited Jan. 4, 2026). Honour is engaged in manufacturing drug substances, intermediates, and formulation excipients which are primarily supplied to Hetero Labs and other entities within the Hetero group of companies. *Pharma Industry News*, https://pharma.industry-report.net/honour-lab-ltd/ (last visited Jan. 4, 2026); *Honour Lab – Custom Synthesis*, https://www.honourlab.com/custom-synthesis (last t Jan. 4, 206).

21. Honour is the holder of FDA Drug Master File No. 42258 for atogepant.

22. Hetero USA is a United States agent for Hetero Labs. Hetero USA claims that it is "a group company of Hetero" and "the sales and marketing arm of Hetero's Active Pharmaceutical Ingredients (API) and Custom Pharmaceutical Services (CPS) business in [the] USA." *Global Presence of Hetero Across the World*, https://hetero.com/presence (last visited Jan. 4, 2026). Hetero USA is registered with the State of New Jersey's Division of Revenue and Enterprise under Entity ID No. 0400362826. Hetero USA is registered as a drug distributor with the New Jersey Department of Health under Permit No. 5004050.

23. Hetero USA, Hetero Unit-III, Hetero Labs, and Honour hold themselves out as a unitary entity and operate as a single integrated business with respect to the regulatory approval, manufacturing, marketing, sale, and distribution of generic pharmaceutical products throughout the United States, including in this judicial district.

24. Hetero USA, Hetero Unit-III, Hetero Labs, and Honour each directly or indirectly currently sells significant quantities of generic drug products and derives substantial revenue from the sale of those products in the United States and in this judicial district. Hetero claims to be "[a]mong India's leading generic pharmaceutical companies." *About Us*, https://hetero.com/about-us (last visited Jan. 4, 2026). Hetero claims that it "[has] over 38 strategically located manufacturing facilities, catering to diverse market requirements on demand – including . . . [the] USA." Hetero, *Corporate Presentation, October, 2023*, 4 (2023), https://www.hetero.com/pdf/hetero_corporate_ppt_october_2023.pdf (last visited Jan. 4, 2026) ("Hetero Corporate Presentation"). Hetero claims to be "manufacturing branded and non-branded generics," with "200+ products across various therapeutic categories." *Id.* at 6. Hetero claims that it "[is] among the largest supplier of therapeutic drugs to markets in . . . [the] US." *Key Therapies at Hetero*, https://www.hetero.com/key-therapies (last visited Jan. 4, 2026). Honour is a "backward-integrated unit for Hetero Labs Limited (flagship company of Hetero Group) and thus derives majority revenue (~65% in FY24) by selling Intermediates to them." *CareEdge Ratings – Honour Lab Limited, December 31, 2024* at 1, https://www.careratings.com/upload/CompanyFiles/PR/202412141244_Honour_Lab_Limited.pdf (last visited Jan. 4, 2026). Honour's website lists the FDA under its "Regulatory Approvals." https://www.honourlab.com/ (last visited Jan. 4, 2026). Honour purports to have "capabilities in manufacturing APIs, intermediates, and excipients . . . with reliable quality and performance." *Honour Lab – Custom Synthesis*, https://www.honourlab.com/custom-synthesis (last t Jan. 4, 206); *see also* https://www.honourlab.com/ (last visited Jan. 4, 2026) ("API Manufacturing (NCEs & Generic APIs)").

25. Hetero is engaged in the submission and approval of ANDAs for the United States market. *See, e.g.*, *2022 First Generic Drug Approvals*, U.S. Food & Drug Administration (Mar. 3, 2023), https://www.fda.gov/drugs/drug-and-biologic-approval-and-ind-activity-reports/2022-first-generic-drug-approvals (last visited Jan. 4, 2026) (listing the approval of Hetero Labs' ANDA No. 204787 and Hetero Unit-III's ANDA No. 203347); *Original Abbreviated New Drug Application (ANDA) Approvals, October 2023*, U.S. Food & Drug Administration, https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=reportsSearch.process&rptName=3&reportSelectMonth=10&reportSelectYear=2023&nav#navigation (last visited Jan. 4, 2026) (listing the approval of Hetero Unit-III's ANDA Nos. 091475, 216749, and 214571); *Honour Lab Limited Regulatory Approvals*, https://www.honourlab.com/ (last visited Jan. 4, 2026) (listing USFDA under "Regulatory Approvals").

26. The acts of Hetero USA, Hetero Unit-III, and Honour complained of herein were done with the cooperation, participation, and assistance of Hetero Labs.

27. Hetero's ANDA filing regarding the Patents-in-Suit relates to this litigation and is substantially connected with this judicial district because it predicts Hetero's intent to market and sell Hetero's generic products, including Hetero's generic versions of Plaintiffs' QULIPTA® Tablets, in this judicial district.

28. Hetero USA, Hetero Unit-III, Hetero Labs, and Honour have thus been, and continue to be, joint and prime actors in the drafting, submission, approval and maintenance of ANDA No. 220986.

29. Following FDA approval of ANDA No. 220986, Hetero will import, market, distribute, offer for sale, and/or sell Hetero's generic products described in ANDA No. 220986

throughout the United States, including in New Jersey and will derive substantial revenue from the use, consumption, or sale of Hetero's generic products in the state of New Jersey.

30. If ANDA No. 220986 is approved, Hetero's generic products will be marketed, distributed, offered for sale, and/or sold in New Jersey; prescribed by healthcare providers practicing in New Jersey; administered by healthcare providers located within New Jersey; and/or used by patients in New Jersey, all of which will have a substantial effect on New Jersey.

31. If ANDA No. 220986 is approved, Plaintiffs will be harmed by the marketing, distribution, offer for sale, and/or sale of Hetero's generic products, including in New Jersey.

32. This Court also has personal jurisdiction over Hetero because, inter alia, it has availed itself of this forum previously for the purpose of litigating a patent dispute. Hetero has been sued multiple times in this district without challenging personal jurisdiction. See, e.g., *AbbVie Inc. et al v. Hetero USA Inc. et al*, No. 3:24-cv-04852 (D.N.J. July 16, 2024); *Esperion Therapeutics, Inc. v. Hetero USA Inc. et al*, No. 2:24-cv-06389 (D.N.J. Aug. 6, 2024); *Axsome Malta Ltd. v. Alkem Lab'ys Ltd.*, No. 2:23-cv-20354-MCA-JBC (D.N.J. Nov. 17, 2023); *Merck Sharp & Dohme LLC v. Hetero USA, Inc.*, No. 2:22-cv-06820-ES-CLW (D.N.J. Feb. 10, 2023); *Rigel Pharms., Inc. v. Annora Pharma Priv., Ltd.*, No. 2:22-cv-04732 (D.N.J. Sept. 21, 2022); *Aragon Pharms., Inc. v. Hetero Labs Ltd. Unit V*, No. 2:22-cv-03212 (D.N.J. Aug. 5, 2022).

33. For these reasons and for other reasons that will be presented to the Court if jurisdiction is challenged, the Court has personal jurisdiction over Hetero.

34. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b), because Hetero USA has a principal place of business in New Jersey, and for all the reasons set forth above.

35. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b), because Hetero Unit-III is incorporated in India and may be sued in any judicial district in the United States, and for all the reasons set forth above.

36. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b), because Hetero Labs is incorporated in India and may be sued in any judicial district in the United States, and for all the reasons set forth above.

37. Venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b), because Honour is incorporated in India and may be sued in any judicial district in the United States, and for all the reasons set forth above.

## FACTUAL BACKGROUND

### QULIPTA® and the NDA

38. AbbVie is the holder of New Drug Application ("NDA") No. 215206 for QULIPTA® (atogepant) tablets in 10 mg, 30 mg, and 60 mg dosage forms.

39. The FDA approved NDA No. 215206 on September 28, 2021.

40. The FDA Orange Book for NDA No. 215206 for QULIPTA® (atogepant) oral tablets, 10 mg, 30 mg, 60 mg, lists the '148 patent, the '259 patent, the '545 patent, and the '598 patent, as well as U.S. Patent Nos. 8,754,096 ("the '096 patent"), 9,499,545 ("the '9545 patent"), 9,850,246 ("the '246 patent"), and 10,117,836 ("the '836 patent").

41. QULIPTA® Tablets are approved for the preventive treatment of migraine in adults. Atogepant is the active ingredient of QULIPTA® Tablets. Atogepant is a calcitonin gene-related (CGRP) receptor antagonist.

42. Migraine is a debilitating disease. Migraine impacts more than 37 million men, women, and children in the United States. Migraine costs millions of dollars each year in the

United States due to direct medical expenses and lost productivity. Migraine is also associated with other illnesses.

43. For episodic migraine, the recommended dose of QULIPTA® Tablets is 10 mg, 30 mg, or 60 mg taken orally with or without food, once daily. For chronic migraine, the recommended dose of QULIPTA® Tablets is 60 mg taken orally with or without food, once daily. For patients who concomitantly use strong CYP3A4 inhibitors, the recommended dose is 10 mg once daily. The FDA approved the inclusion of this safe and effective dosing regimen for QULIPTA® for patients who concomitantly use strong CYP3A4 inhibitors, and information concerning these patients is included in the QULIPTA® Label. For patients with severe renal impairment or end-stage renal disease, the recommended dose is 10 mg once daily to prevent episodic migraine. The FDA approved the inclusion of this safe and effective dosing regimen for QULIPTA® for patients with severe renal impairment or end-stage renal disease, and information concerning these patients is included in the QULIPTA® Label.

44. The QULIPTA® Label includes information regarding "Liver Enzyme Elevations." Specifically, the QULIPTA® Label reports that in three clinical trials, Study 1, Study 2, and Study 3, "the rate of transaminase elevations over 3 times the upper limit of normal was similar between patients treated with QULIPTA (0.9%) and those treated with placebo (1.2%)." The QULIPTA® Label also includes information regarding "Decreases in Body Weight." In Study 1, Study 2, and Study 3, "the proportion of patients with a weight decrease of at least 7% at any point was 2.5% for placebo, 3.8% for QULIPTA 10 mg, 3.2% for QULIPTA 30 mg, and 5.3% for QULIPTA 60 mg."

45. To date, only two orally available CGRP receptor antagonists have been approved by FDA for preventive treatment of migraine. The prescribing information for the other,

NURTEC® ODT, states that use of the drug should be avoided in patients who concomitantly use strong CYP3A inhibitors. It also states that use of the drug should be avoided in patients with end-stage renal disease. Thus, QULIPTA® Tablets are the only orally available CGRP receptor antagonist in the United States indicated for preventive treatment of migraine in patients who concomitantly use strong CYP3A inhibitors or with end-stage renal disease. The NURTEC® ODT Label is silent on transaminase elevations and a weight decrease upon treatment with NURTEC® ODT.

46. QULIPTA® Tablets are marketed and sold in the United States by AbbVie.

**The Patents-in-Suit**

47. The ’148 patent, titled “Treatment of Migraine,” was duly and legally issued by the United States Patent and Trademark Office (“USPTO”) on September 17, 2024. A true and correct copy of the ’148 patent is attached as Exhibit A.

48. Allergan is the assignee of the ’148 patent through assignment as recorded by the USPTO at Reel 62450, Frame 0822.

49. The ’148 patent currently expires on July 29, 2041.

50. The ’148 patent is listed in the FDA Orange Book in connection with NDA No. 215206 for QULIPTA® (atogepant) oral tablets, 10 mg, 30 mg, and 60 mg.

51. The ’259 patent, titled “Methods of Treating of Migraine,” was duly and legally issued by the USPTO on July 8, 2025. A true and correct copy of the ’259 patent is attached as Exhibit B.

52. Allergan is the assignee of the ’259 patent through assignment as recorded by the USPTO at Reel 66665, Frame 0592.

53. The ’259 patent currently expires on May 11, 2043.

54. The ’259 patent is listed in the FDA Orange Book in connection with NDA No. 215206 for QULIPTA® (atogepant) oral tablet, 10 mg.

55. The ’545 patent, titled “Treatment of Migraine,” was duly and legally issued by the United States Patent and Trademark Office on August 12, 2025. A true and correct copy of the ’545 patent is attached as Exhibit C.

56. Allergan is the assignee of the ’545 patent through assignment as recorded by the USPTO at Reel 71617, Frame 0585; and Reel 71552, Frame 0563.

57. The ’545 patent currently expires on June 6, 2039.

58. The ’545 patent is listed in the FDA Orange Book in connection with NDA No. 215206 for QULIPTA® (atogepant) oral tablets, 10 mg, 30 mg, and 60 mg.

59. The ’598 patent, titled “Methods of Treating Migraine,” was duly and legally issued by the United States Patent and Trademark Office on November 11, 2025. A true and correct copy of the ’598 patent is attached as Exhibit D.

60. Allergan is the assignee of the ’598 patent through assignment as recorded by the USPTO at Reel 70393, Frame 0388.

61. The ’598 patent currently expires on September 27, 2042.

62. The ’598 patent is listed in the FDA Orange Book in connection with NDA No. 215206 for QULIPTA® (atogepant) oral tablets, 10 mg.

**<u>Hetero’s ANDA No. 220986</u>**

63. Hetero filed ANDA No. 220986 with the FDA under 21 U.S.C. § 355(j) to obtain FDA approval for the commercial manufacture, use, import, offer for sale, and/or sale in the United States of atogepant oral tablets, 10 mg, 30 mg, 60 mg, which are generic versions of AbbVie’s QULIPTA® Tablets.

64. AbbVie received a letter sent by Hetero ("Hetero's Notice Letter"), dated November 24, 2025, purporting to be a notice letter "[i]n accordance with subsection 505(j)(2)(B) of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 355(j)(2)(B), and 21 C.F.R. § 314.95(a)."

65. Hetero's Notice Letter represents that Hetero's ANDA No. 220986 contains a Paragraph IV certification alleging that the claims of the '148, '259, and '545 patents are invalid, unenforceable, and/or will not be infringed by Hetero's generic products.

66. Hetero's Notice Letter and the information contained therein, coupled with regulatory requirements, demonstrate Hetero's infringement of the '148, '259, and '545 patents.

67. Plaintiffs have not yet received a Notice of Paragraph IV Certification regarding Hetero's ANDA No. 220986 for the '598 patent ("'598 Patent Notice Letter") under Section 505(j)(2)(B)(iv) of the Federal Food, Drug, and Cosmetic Act and 21 C.F.R. § 314.95.

68. Hetero's Notice Letter and the information contained therein, coupled with regulatory requirements, demonstrate Hetero's infringement of the '598 patent.

69. Plaintiffs have not yet received a Notice of Paragraph IV Certification regarding Hetero's ANDA No. 220986 for the '096, '9545, '246 patent, or '836 patents under Section 505(j)(2)(B)(iv) of the Federal Food, Drug, and Cosmetic Act and 21 C.F.R. § 314.95. Further, Hetero's Notice Letter does not state or otherwise indicate that Hetero submitted a Paragraph IV certification for the '096, '9545, '246, or '836 patents, each of which is listed in the FDA Orange Book for QULIPTA® (atogepant) oral tablets, 10 mg, 30 mg, 60 mg. Accordingly, Hetero submitted a Paragraph III certification for the '096, '9545, '246, and '836 patents. Hetero will thus not launch a generic product under ANDA No. 220986 at least before September 28, 2035.

70. Hetero's purpose in submitting ANDA No. 220986 and a Paragraph IV certification is to market Hetero's generic products before the expiration of the '148, '259, '545, and '598 patents. Hetero intends to market Hetero's generic products before the expiration of the '148, '259, '545, and '598 patents.

71. To obtain approval of an ANDA for a generic drug, an ANDA applicant must show, *inter alia*, that the generic drug is bioequivalent to its reference listed drug. *See* 21 U.S.C. § 355(j)(2)(A)(iv). If approved, Hetero's generic products will be bioequivalent to AbbVie's QULIPTA® Tablets.

72. To obtain approval of an ANDA for a generic drug, an ANDA applicant must also show, *inter alia*, that the conditions of use prescribed, recommended, or suggested in the proposed labeling have been previously approved for its reference listed drug. *See* 21 U.S.C. § 355(j)(2)(A)(i). Further, the FDA will refuse to approve an ANDA if the labeling proposed for a generic drug product differs from the labeling approved for its reference listed drug product and such differences make the proposed generic drug product less safe or effective. *See* 21 C.F.R. § 314.127(a)(7). If approved, Hetero's generic products will have the same indication and safety and efficacy information as AbbVie's QULIPTA® Tablets.

73. Hetero's Notice Letter purported to offer confidential access to Hetero's ANDA No. 220986 on terms and conditions set forth in Hetero's Notice Letter ("Hetero's Offer of Confidential Access"). Outside counsel for AbbVie and Allergan negotiated in good faith with counsel for Hetero in an attempt to reach agreement on reasonable terms of confidential access to Hetero's ANDA No. 220986. The parties engaged in multiple rounds of negotiation. As of January 7, 2026, the parties were unable to reach agreement. To date, AbbVie and Allergan have not received access to Hetero's ANDA No. 220986.

74. Following FDA approval of Hetero's ANDA No. 220986, Hetero will make, use, sell, and/or offer to sell Hetero's generic products throughout the United States, or import such generic products into the United States before the Patents-in-Suit expire. The manufacture, use, offer for sale, sale, and/or importation of Hetero's generic products will directly infringe the Patents-in-Suit.

75. Following FDA approval of Hetero's ANDA No. 220986, Hetero will actively induce or contribute to the manufacture, use, offer for sale, and/or sale of Hetero's generic products in a manner that infringes the Patents-in-Suit.

76. Plaintiffs commenced this action within 45 days of receiving Hetero's Notice Letter.

**COUNT I**
**INFRINGEMENT BY HETERO OF THE '148 PATENT**

77. Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

78. Hetero filed its ANDA in order to obtain approval to manufacture, use, import, offer to sell, and/or sell Hetero's generic products in the United States before the expiration of the '148 patent.

79. Hetero's Notice Letter states that Hetero submitted to the FDA, a certification that the claims of the '148 patent are purportedly invalid, unenforceable, and/or will not be infringed.

80. Hetero represented to the FDA that Hetero's generic products are pharmaceutically and therapeutically equivalent to AbbVie's QULIPTA® Tablets.

81. Under 35 U.S.C. § 271(e)(2)(A), the submission to the FDA of Hetero's ANDA seeking approval for the commercial manufacture, use, or sale of Hetero's generic products before

the expiration date of the ’148 patent, constitutes infringement, either literally or under the doctrine of equivalents.

82. After FDA approval of Hetero’s ANDA, Hetero will infringe one or more claims of the ’148 patent, either literally or under the doctrine of equivalents under § 271(a) by making, using, offering to sell, selling, and/or importing Hetero’s generic products, by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court orders that the effective date of any FDA approval of Hetero’s ANDA shall be no earlier than the expiration of the ’148 patent and any additional periods of exclusivity.

83. Hetero knows or should know, and intends that healthcare providers will prescribe and patients will take Hetero’s generic products for which approval is sought in Hetero’s ANDA, and therefore will infringe at least one claim in the ’148 patent.

84. Hetero had knowledge of the ’148 patent, as evidenced by Hetero’s Notice Letter, and, by its promotional activities and proposed package insert for Hetero’s generic products, knows or should know that it will induce direct infringement of at least one of the claims of the ’148 patent, either literally or under the doctrine of equivalents.

85. Hetero is aware and/or has knowledge that it will advertise an infringing use and/or instruct how to engage in an infringing use because healthcare professionals and/or patients will use Hetero’s generic products according to the instructions in the proposed package insert in a way that directly infringes the ’148 patent.

86. The offering to sell, sale, making, and/or importation of Hetero’s generic products will actively induce infringement of at least one of the claims of the ’148 patent, either literally or under the doctrine of equivalents. Hetero has knowledge and is aware of the ’148 patent, as evidenced by Hetero’s Notice Letter.

87. If Hetero's ANDA is approved, Hetero intends to and will offer to sell, sell, and/or import in the United States Hetero's generic products.

88. Hetero's actions relating to Hetero's ANDA complained of herein were done by and for the benefit of Hetero.

89. Plaintiffs will be irreparably harmed if Hetero is not enjoined from infringing, actively inducing, and contributing to infringement of at least one claim of the '148 patent.

90. Plaintiffs do not have an adequate remedy at law.

**COUNT II**
**DECLARATORY JUDGMENT OF**
**INFRINGEMENT BY HETERO OF THE '148 PATENT**

91. Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

92. Plaintiffs' claims also arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

93. Hetero filed its ANDA in order to obtain approval to manufacture, use, import, offer to sell, and/or sell Hetero's generic products in the United States before the expiration of the '148 patent.

94. Hetero represented to the FDA that Hetero's generic products are pharmaceutically and therapeutically equivalent to AbbVie's QULIPTA® Tablets.

95. After FDA approval of Hetero's ANDA, Hetero will infringe one or more claims of the '148 patent, either literally or under the doctrine of equivalents under § 271(a) by making, using, offering to sell, selling, and/or importing Hetero's generic products, by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless

this Court orders that the effective date of any FDA approval of Hetero's ANDA shall be no earlier than the expiration of the '148 patent and any additional periods of exclusivity.

96. Hetero knows or should know, and intends that healthcare providers will prescribe and patients will take Hetero's generic products for which approval is sought in Hetero's ANDA, and therefore will infringe at least one claim in the '148 patent.

97. Hetero had knowledge of the '148 patent, as evidenced by Hetero's Notice Letter, and, by its promotional activities and proposed package insert for Hetero's generic products, knows or should know that it will induce direct infringement of at least one of the claims of the '148 patent, either literally or under the doctrine of equivalents.

98. Hetero is aware and/or has knowledge that it will advertise an infringing use and/or instruct how to engage in an infringing use because healthcare professionals and/or patients will use Hetero's generic products according to the instructions in the proposed package insert in a way that directly infringes the '148 patent.

99. The offering to sell, sale, making, and/or importation of Hetero's generic products would actively induce infringement of at least one of the claims of the '148 patent, either literally or under the doctrine of equivalents. Hetero has knowledge and is aware of the '148 patent, as evidenced by Hetero's Notice Letter.

100. If Hetero's ANDA is approved, Hetero intends to and will offer to sell, sell, and/or import in the United States Hetero's generic products.

101. Hetero's actions relating to Hetero's ANDA complained of herein were done by and for the benefit of Hetero.

102. Hetero's infringing activity, including the manufacture, use, import, offer to sell, and/or sale of Hetero's generic products in the United States, will begin immediately after FDA

approves Hetero's generic products. Such activity before the expiration of the '148 patent will constitute infringement of one or more claims of the '148 patent under 35 U.S.C. §§ 271(a), (b), and/or (c).

103. As a result of the foregoing facts, there is a real, substantial, and continuing justiciable controversy between Plaintiffs and Hetero concerning liability for the infringement of the '148 patent for which this Court may grant declaratory relief consistent with Article III of the United States Constitution.

104. Plaintiffs will be irreparably harmed if Hetero is not enjoined from infringing, actively inducing, and contributing to infringement of at least one claim of the '148 patent.

105. Plaintiffs do not have an adequate remedy at law.

**COUNT III**
**INFRINGEMENT BY HETERO OF THE '259 PATENT**

106. Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

107. Hetero filed its ANDA in order to obtain approval to manufacture, use, import, offer to sell, and/or sell Hetero's generic products in the United States before the expiration of the '259 patent.

108. Hetero represented to the FDA that Hetero's generic products are pharmaceutically and therapeutically equivalent to AbbVie's QULIPTA® Tablets.

109. Under 35 U.S.C. § 271(e)(2)(A), the submission to the FDA of Hetero's ANDA seeking approval for the commercial manufacture, use, or sale of Hetero's generic products before the expiration date of the '259 patent, constitutes infringement, either literally or under the doctrine of equivalents.

110. After FDA approval of Hetero's ANDA, Hetero will infringe one or more claims of the '259 patent, either literally or under the doctrine of equivalents under § 271(a) by making, using, offering to sell, selling, and/or importing Hetero's generic products, by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court orders that the effective date of any FDA approval of Hetero's ANDA shall be no earlier than the expiration of the '259 patent and any additional periods of exclusivity.

111. Hetero knows or should know, and intends that healthcare providers will prescribe and patients will take Hetero's generic products for which approval is sought in Hetero's ANDA, and therefore will infringe at least one claim in the '259 patent.

112. Hetero had knowledge of the '259 patent and, by its promotional activities and proposed package insert for Hetero's generic products, knows or should know that it will induce direct infringement of at least one of the claims of the '259 patent, either literally or under the doctrine of equivalents.

113. Hetero is aware and/or has knowledge that it will advertise an infringing use and/or instruct how to engage in an infringing use because healthcare professionals and/or patients will use Hetero's generic products according to the instructions in the proposed package insert in a way that directly infringes the '259 patent.

114. The offering to sell, sale, making, and/or importation of Hetero's generic products will actively induce infringement of at least one of the claims of the '259 patent, either literally or under the doctrine of equivalents. Hetero has knowledge and is aware of the '259 patent.

115. If Hetero's ANDA is approved, Hetero intends to and will offer to sell, sell, and/or import in the United States Hetero's generic products.

116. Hetero's actions relating to Hetero's ANDA complained of herein were done by and for the benefit of Hetero.

117. Plaintiffs will be irreparably harmed if Hetero is not enjoined from infringing, actively inducing, and contributing to infringement of at least one claim of the '259 patent.

118. Plaintiffs do not have an adequate remedy at law.

**COUNT IV**
**DECLARATORY JUDGMENT OF**
**INFRINGEMENT BY HETERO OF THE '259 PATENT**

119. Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

120. Plaintiffs' claims also arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

121. Hetero filed its ANDA in order to obtain approval to manufacture, use, import, offer to sell, and/or sell Hetero's generic products in the United States before the expiration of the '259 patent.

122. Hetero represented to the FDA that Hetero's generic products are pharmaceutically and therapeutically equivalent to AbbVie's QULIPTA® Tablets.

123. After FDA approval of Hetero's ANDA, Hetero will infringe one or more claims of the '259 patent, either literally or under the doctrine of equivalents under § 271(a) by making, using, offering to sell, selling, and/or importing Hetero's generic products, by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court orders that the effective date of any FDA approval of Hetero's ANDA shall be no earlier than the expiration of the '259 patent and any additional periods of exclusivity.

124. Hetero knows or should know, and intends that healthcare providers will prescribe and patients will take Hetero's generic products for which approval is sought in Hetero's ANDA, and therefore will infringe at least one claim in the '259 patent.

125. Hetero had knowledge of the '259 patent and, by its promotional activities and proposed package insert for Hetero's generic products, knows or should know that it will induce direct infringement of at least one of the claims of the '259 patent, either literally or under the doctrine of equivalents.

126. Hetero is aware and/or has knowledge that it will advertise an infringing use and/or instruct how to engage in an infringing use because healthcare professionals and/or patients will use Hetero's generic products according to the instructions in the proposed package insert in a way that directly infringes the '259 patent.

127. The offering to sell, sale, making, and/or importation of Hetero's generic products would actively induce infringement of at least one of the claims of the '259 patent, either literally or under the doctrine of equivalents. Hetero has knowledge and is aware of the '259 patent.

128. If Hetero's ANDA is approved, Hetero intends to and will offer to sell, sell, and/or import in the United States Hetero's generic products.

129. Hetero's actions relating to Hetero's ANDA complained of herein were done by and for the benefit of Hetero.

130. Hetero's infringing activity, including the manufacture, use, import, offer to sell, and/or sale of Hetero's generic products in the United States, will begin immediately after FDA approves Hetero's generic products. Such activity before the expiration of the '259 patent will constitute infringement of one or more claims of the '259 patent under 35 U.S.C. §§ 271(a), (b), and/or (c).

131. As a result of the foregoing facts, there is a real, substantial, and continuing justiciable controversy between Plaintiffs and Hetero concerning liability for the infringement of the ’259 patent for which this Court may grant declaratory relief consistent with Article III of the United States Constitution.

132. Plaintiffs will be irreparably harmed if Hetero is not enjoined from infringing, actively inducing, and contributing to infringement of at least one claim of the ’259 patent.

133. Plaintiffs do not have an adequate remedy at law.

**COUNT V**
**INFRINGEMENT BY HETERO OF THE ’545 PATENT**

134. Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

135. Hetero filed its ANDA in order to obtain approval to manufacture, use, import, offer to sell, and/or sell Hetero’s generic products in the United States before the expiration of the ’545 patent.

136. Hetero represented to the FDA that Hetero’s generic products are pharmaceutically and therapeutically equivalent to AbbVie’s QULIPTA® Tablets.

137. Under 35 U.S.C. § 271(e)(2)(A), the submission to the FDA of Hetero’s ANDA seeking approval for the commercial manufacture, use, or sale of Hetero’s generic products before the expiration date of the ’545 patent, constitutes infringement, either literally or under the doctrine of equivalents.

138. After FDA approval of Hetero’s ANDA, Hetero will infringe one or more claims of the ’545 patent, either literally or under the doctrine of equivalents under § 271(a) by making, using, offering to sell, selling, and/or importing Hetero’s generic products, by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless

this Court orders that the effective date of any FDA approval of Hetero's ANDA shall be no earlier than the expiration of the '545 patent and any additional periods of exclusivity.

139. Hetero knows or should know, and intends that healthcare providers will prescribe and patients will take Hetero's generic products for which approval is sought in Hetero's ANDA, and therefore will infringe at least one claim in the '545 patent.

140. Hetero had knowledge of the '545 patent and, by its promotional activities and proposed package insert for Hetero's generic products, knows or should know that it will induce direct infringement of at least one of the claims of the '545 patent, either literally or under the doctrine of equivalents.

141. Hetero is aware and/or has knowledge that it will advertise an infringing use and/or instruct how to engage in an infringing use because healthcare professionals and/or patients will use Hetero's generic products according to the instructions in the proposed package insert in a way that directly infringes the '545 patent.

142. The offering to sell, sale, making, and/or importation of Hetero's generic products would actively induce infringement of at least one of the claims of the '545 patent, either literally or under the doctrine of equivalents. Hetero has knowledge and is aware of the '545 patent.

143. If Hetero's ANDA is approved, Hetero intends to and will offer to sell, sell, and/or import in the United States Hetero's generic products.

144. Hetero's actions relating to Hetero's ANDA complained of herein were done by and for the benefit of Hetero.

145. Plaintiffs will be irreparably harmed if Hetero is not enjoined from infringing, actively inducing, and contributing to infringement of at least one claim of the '545 patent.

146. Plaintiffs do not have an adequate remedy at law.

**COUNT VI**
**DECLARATORY JUDGMENT OF**
**INFRINGEMENT BY HETERO OF THE ’545 PATENT**

147. Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

148. Plaintiffs’ claims also arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

149. Hetero filed its ANDA in order to obtain approval to manufacture, use, import, offer to sell, and/or sell Hetero’s generic products in the United States before the expiration of the ’545 patent.

150. Hetero represented to the FDA that Hetero’s generic products are pharmaceutically and therapeutically equivalent to AbbVie’s QULIPTA® Tablets.

151. After FDA approval of Hetero’s ANDA, Hetero will infringe one or more claims of the ’545 patent, either literally or under the doctrine of equivalents under § 271(a) by making, using, offering to sell, selling, and/or importing Hetero’s generic products, by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court orders that the effective date of any FDA approval of Hetero’s ANDA shall be no earlier than the expiration of the ’545 patent and any additional periods of exclusivity.

152. Hetero knows or should know, and intends that healthcare providers will prescribe and patients will take Hetero’s generic products for which approval is sought in Hetero’s ANDA, and therefore will infringe at least one claim in the ’545 patent.

153. Hetero had knowledge of the ’545 patent and, by its promotional activities and proposed package insert for Hetero’s generic products, knows or should know that it will induce

direct infringement of at least one of the claims of the ’545 patent, either literally or under the doctrine of equivalents.

154. Hetero is aware and/or has knowledge that it is advertising an infringing use and/or instructing how to engage in an infringing use because healthcare professionals and/or patients will use Hetero’s generic products according to the instructions in the proposed package insert in a way that directly infringes the ’545 patent.

155. The offering to sell, sale, making, and/or importation of Hetero’s generic products would actively induce infringement of at least one of the claims of the ’545 patent, either literally or under the doctrine of equivalents. Hetero has knowledge and is aware of the ’545 patent.

156. If Hetero’s ANDA is approved, Hetero intends to and will offer to sell, sell, and/or import in the United States Hetero’s generic products.

157. Hetero’s actions relating to Hetero’s ANDA complained of herein were done by and for the benefit of Hetero.

158. Hetero’s infringing activity, including the manufacture, use, import, offer to sell, and/or sale of Hetero’s generic products in the United States, will begin immediately after FDA approves Hetero’s generic products. Such activity before the expiration of the ’545 patent will constitute infringement of one or more claims of the ’545 patent under 35 U.S.C. §§ 271(a), (b), and/or (c).

159. As a result of the foregoing facts, there is a real, substantial, and continuing justiciable controversy between Plaintiffs and Hetero concerning liability for the infringement of the ’545 patent for which this Court may grant declaratory relief consistent with Article III of the United States Constitution.

160. Plaintiffs will be irreparably harmed if Hetero is not enjoined from infringing, actively inducing, and contributing to infringement of at least one claim of the ’545 patent.

161. Plaintiffs do not have an adequate remedy at law.

**COUNT VII**
**<u>INFRINGEMENT BY HETERO OF THE ’598 PATENT</u>**

162. Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

163. This Complaint provides notice of the ’598 patent to the extent that Hetero did not already have notice of this patent.

164. Hetero filed its ANDA in order to obtain approval to manufacture, use, import, offer to sell, and/or sell Hetero’s generic products in the United States before the expiration of the ’598 patent.

165. Hetero represented to the FDA that Hetero’s generic products are pharmaceutically and therapeutically equivalent to AbbVie’s QULIPTA® Tablets.

166. Under 35 U.S.C. § 271(e)(2)(A), the submission to the FDA of Hetero’s ANDA seeking approval for the commercial manufacture, use, or sale of Hetero’s generic products before the expiration date of the ’598 patent, constitutes infringement, either literally or under the doctrine of equivalents.

167. After FDA approval of Hetero’s ANDA, Hetero will infringe one or more claims of the ’598 patent, either literally or under the doctrine of equivalents under § 271(a) by making, using, offering to sell, selling, and/or importing Hetero’s generic products, by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court orders that the effective date of any FDA approval of Hetero’s ANDA shall be no earlier than the expiration of the ’598 patent and any additional periods of exclusivity.

168. Hetero knows or should know, and intends that healthcare providers will prescribe and patients will take Hetero's generic products for which approval is sought in Hetero's ANDA, and therefore will infringe at least one claim in the '598 patent.

169. Hetero had knowledge of the '598 patent and, by its promotional activities and proposed package insert for Hetero's generic products, knows or should know that it will induce direct infringement of at least one of the claims of the '598 patent, either literally or under the doctrine of equivalents.

170. Hetero is aware and/or has knowledge that it will advertise an infringing use and/or instruct how to engage in an infringing use because healthcare professionals and/or patients will use Hetero's generic products according to the instructions in the proposed package insert in a way that directly infringes the '598 patent.

171. The offering to sell, sale, making, and/or importation of Hetero's generic products would actively induce infringement of at least one of the claims of the '598 patent, either literally or under the doctrine of equivalents. Hetero has knowledge and is aware of the '598 patent.

172. If Hetero's ANDA is approved, Hetero intends to and will offer to sell, sell, and/or import in the United States Hetero's generic products.

173. Hetero's actions relating to Hetero's ANDA complained of herein were done by and for the benefit of Hetero.

174. Plaintiffs will be irreparably harmed if Hetero is not enjoined from infringing, actively inducing, and contributing to infringement of at least one claim of the '598 patent.

175. Plaintiffs do not have an adequate remedy at law.

**COUNT VIII**
**DECLARATORY JUDGMENT OF**
**INFRINGEMENT BY HETERO OF THE ’598 PATENT**

176. Plaintiffs incorporate by reference the prior paragraphs of this Complaint as if fully set forth herein.

177. Plaintiffs’ claims also arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

178. This Complaint provides notice of the ’598 patent to the extent that Hetero did not already have notice of this patent.

179. Hetero filed its ANDA in order to obtain approval to manufacture, use, import, offer to sell, and/or sell Hetero’s generic products in the United States before the expiration of the ’598 patent.

180. Hetero represented to the FDA that Hetero’s generic products are pharmaceutically and therapeutically equivalent to AbbVie’s QULIPTA® Tablets.

181. After FDA approval of Hetero’s ANDA, Hetero will infringe one or more claims of the ’598 patent, either literally or under the doctrine of equivalents under § 271(a) by making, using, offering to sell, selling, and/or importing Hetero’s generic products, by actively inducing infringement by others under § 271(b), and/or contributing to infringement under § 271(c), unless this Court orders that the effective date of any FDA approval of Hetero’s ANDA shall be no earlier than the expiration of the ’598 patent and any additional periods of exclusivity.

182. Hetero knows or should know, and intends that healthcare providers will prescribe and patients will take Hetero’s generic products for which approval is sought in Hetero’s ANDA, and therefore will infringe at least one claim in the ’598 patent.

183. Hetero had knowledge of the ’598 patent and, by its promotional activities and proposed package insert for Hetero’s generic products, knows or should know that it will induce direct infringement of at least one of the claims of the ’598 patent, either literally or under the doctrine of equivalents.

184. Hetero is aware and/or has knowledge that it is advertising an infringing use and/or instructing how to engage in an infringing use because healthcare professionals and/or patients will use Hetero’s generic products according to the instructions in the proposed package insert in a way that directly infringes the ’598 patent.

185. The offering to sell, sale, making, and/or importation of Hetero’s generic products would actively induce infringement of at least one of the claims of the ’545 patent, either literally or under the doctrine of equivalents. Hetero has knowledge and is aware of the ’598 patent.

186. If Hetero’s ANDA is approved, Hetero intends to and will offer to sell, sell, and/or import in the United States Hetero’s generic products.

187. Hetero’s actions relating to Hetero’s ANDA complained of herein were done by and for the benefit of Hetero.

188. Hetero’s infringing activity, including the manufacture, use, import, offer to sell, and/or sale of Hetero’s generic products in the United States, will begin immediately after FDA approves Hetero’s generic products. Such activity before the expiration of the ’598 patent will constitute infringement of one or more claims of the ’598 patent under 35 U.S.C. §§ 271(a), (b), and/or (c).

189. As a result of the foregoing facts, there is a real, substantial, and continuing justiciable controversy between Plaintiffs and Hetero concerning liability for the infringement of

the ’598 patent for which this Court may grant declaratory relief consistent with Article III of the United States Constitution.

190. Plaintiffs will be irreparably harmed if Hetero is not enjoined from infringing, actively inducing, and contributing to infringement of at least one claim of the ’598 patent.

191. Plaintiffs do not have an adequate remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A. The entry of judgment under 35 U.S.C. § 271(e)(2)(A) that Hetero has infringed at least one claim of the Patents-in-Suit through Hetero’s submission of ANDA No. 220986 to the FDA to obtain approval to manufacture, use, import, offer to sell, and/or sell Hetero’s generic products in the United States before the expiration of the Patents-in-Suit;

B. The entry of judgment that Hetero’s making, using, offering to sell, selling, or importing Hetero’s generic products prior to the expiration of the Patents-in-Suit will infringe, actively induce infringement, and/or contribute to the infringement of Patents-in-Suit under 35 U.S.C. § 271(a), (b), and/or (c);

C. A declaration under 28 U.S.C. § 2201 that if Hetero, its officers, agents, employees, parents, affiliates, and subsidiaries, and all persons and entities acting in concert with it or on its behalf, engage in the commercial manufacture, use, offer for sale, sale or importation of Hetero’s generic products prior to the expiration of the Patents-in-Suit, it will constitute an act of infringement pursuant to 35 U.S.C. § 271(a), (b), and/or (c);

D. The issuance of an order that the effective date of any FDA approval of Hetero’s generic products shall be no earlier than the expiration of the Patents-in-Suit and any additional periods of exclusivity, in accordance with 35 U.S.C. § 271(e)(4)(A);

E. The entry of a permanent injunction, enjoining Hetero and all persons acting in concert with Hetero from commercially manufacturing, using, offering for sale, or selling Hetero's generic products within the United States, or importing Hetero's generic products into the United States, until the expiration of the Patents-in-Suit, in accordance with 35 U.S.C. §§ 271(e)(4)(B) and 283;

F. The entry of a permanent injunction, enjoining Hetero and all persons acting in concert with Hetero from seeking, obtaining, or maintaining approval of the ANDA until the expiration of the Patents-in-Suit, in accordance with 35 U.S.C. §§ 271(e)(4)(B) and 283;

G. The issuance of a declaration that this is an exceptional case and an award to Plaintiffs of costs, expenses, and disbursements in this action, including reasonable attorney fees, pursuant to 35 U.S.C. §§ 285 and 271(e)(4);

H. An award to Plaintiffs of any further appropriate relief under 35 U.S.C. § 271(e)(4); and

I. An award to Plaintiffs of any further and additional relief that this Court deems just and proper.

Dated: January 7, 2026

/s/ *Jose L. Linares*
Jose L. Linares
Mark M. Makhail
**McCARTER & ENGLISH, LLP**
4 Gateway Center
100 Mulberry St.
Newark, NJ 07102
(973) 622-4444
jlinares@mccarter.com
mmakhail@mccarter.com

**OF COUNSEL**:

William B. Raich (*pro hac vice* forthcoming)
Jennifer H. Roscetti (*pro hac vice* forthcoming)
Cora R. Holt (*pro hac vice* forthcoming)
Lauren J. Robinson (*pro hac vice* forthcoming)
Drew D. Christie (*pro hac vice* forthcoming)
Yoonjin Lee (*pro hac vice* forthcoming)
Kenneth S. Guerra (*pro hac vice* forthcoming)
Emma N. Ng (*pro hac vice* forthcoming)
Shivani Karthikeyan (*pro hac vice* forthcoming)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
901 New York Ave, NW
Washington, DC 20001
(202) 408-4210
william.raich@finnegan.com
jennifer.roscetti@finnegan.com
cora.holt@finnegan.com
lauren.robinson@finnegan.com
drew.christie@finnegan.com
yoonjin.lee@finnegan.com
kenneth.guerra@finnegan.com
emma.ng@finnegan.com
shivani.karthikeyan@finnegan.com

Shannon M. Patrick (*pro hac vice* forthcoming)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
271 17th Street, NW
Suite 1400
Atlanta, GA 30363
(404) 653-6400
shannon.patrick@finnegan.com

*Attorneys for Plaintiffs AbbVie and Allergan*

**LOCAL RULE 11.2 CERTIFICATION**

Pursuant to Local Rule 11.2, I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceedings.

United States Patent Nos. 12,090,148 (the " '148 Patent"), 12,350,259 (the " '259 Patent"), 12,383,545 (the " '545 Patent"), and 12,465,598 (the " '598 Patent") are currently the subject of proceedings before this Court in *AbbVie Inc. et al. v. Apotex Inc*., Civil Action No.: 25-18972 (ZNQ)(JBD), *AbbVie Inc., et al v. Macleods Pharmaceuticals Ltd., et al.*, Civil Action No.: 25-19038 (ZNQ)(JBD) and *AbbVie Inc., et al. v. Dr. Reddy's Laboratories, Ltd., et al.*, Civil Action No.: 25-19039 (ZNQ)(JBD).

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 7, 2026

/s/ *Jose L. Linares*
Jose L. Linares